IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CONNOLLY, individually and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br><br>   v.<br><br>CREATE WELLNESS, INC.,<br><br>                 Defendant. | Civil Action No. 7:26-cv-3324<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIALL DEMANDED** |

Plaintiff John Connolly ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Create Wellness, Inc. ("Defendant" or "Create"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a class action against Defendant for falsely advertising its "Create Creatine Monohydrate Gummies" (the "Products") as containing 4.5 grams per serving of creatine (or 1.5 grams of creatine per a serving size of three gummies). Defendant's Products are bite-sized workout supplements consumers take like gummy vitamins. The gummies are marketed as containing creatine, a supplement popular with gym-goers to help build muscle in their workouts.

2. However, independent laboratory testing of one of Plaintiff's Products he purchased from Defendant showed that the Products contain only about 4.1 grams of creatine per serving, or approximately 10% less than what is claimed on the label.

1

3.      This finding comports with an independent third-party organization, Food Now, that tested Defendant's 1,500 milligram, or 1.5-gram creatine gummies back in 2024.  That organization found that Defendant's products contained only about 80% of what was represented on the labels.[1]

4.      The systematic underfilling of Defendant's products is attributable, according to Food Now, to the defective design of Defendant's product: the creatine interacts with the water inside the gummies causing them creatine content to deteriorate.  This is evidenced by the creatine byproduct found in Food Now's testing.

5.      Accordingly, the amount of creatine in Defendant's Products is critical to consumers, like Plaintiff, who are seeking to supplement their creatine intake.  But because Defendant misstates the amount of creatine in the Products, Plaintiff brings claims on behalf of himself and all similarly situated consumers for violations of New York's General Business Law §§ 349 and 350, breach of express warranty, and unjust enrichment.

**PARTIES**

6.      Plaintiff John Connolly is a New York citizen and resident of Mahopac, New York.  Plaintiff purchased Defendant's creatine gummies on multiple occasions via his subscription.  Plaintiff first subscribed to Defendant's recurring order program in January 2025 from his home where orders were sent.  Plaintiff decided to purchase Defendant's Products because he sought a creatine gummy.  Plaintiff reviewed Defendant's representations and warranties on its website and reasonably understood the representations to mean what they said: that Defendant's Products contained 4.5 grams of creatine per serving.  However, testing of the

---

[1] Food Now, *NOW Testing IDs Creatine Gummies Failings (Plus Brands That Deliver),* https://www.wholefoodsmagazine.com/articles/16736-now-testing-identifies-creatine-gummies-failings.

very Product he received from his February 2025 order mailed to his home from Defendant showed that it contained approximately 10% less creatine than stated on the label and Defendant's website.

7.      Defendant Create Wellness LLC is a Delaware entity with its principal place of business at 300 North End Avenue, New York, NY.  Defendant markets, sells, and distributes the Product throughout the contiguous United States, including in New York.  Defendant manufactured, marketed, and sold the Product at issue at all times during the relevant class period.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), in that: (1) this is a class action involving more than 100 class members and at least one class member is a citizen of a state different from at least one Defendant; and (2) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, including into this District, and contracts to supply goods within the State of New York, such that they have continuous and systematic contacts with the State of New York.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

**A.      Creatine In Workout Supplements**

11.     Creatine is a natural source of energy that helps skeletal muscles contract.  This is essential when performing any physical activity.

12.     Creatine in its naturally occurring form is a compound comprised of three amino acids produced in the liver, kidneys, and pancreas.  While creatine aids muscles when performing physical activity, research has found that the level of naturally produced creatine in the body is usually insufficient to improve athletic performance.  This is why athletes and gym goers rely on synthetic creatine supplements.  The most studied synthetic creatine formulation is creatine monohydrate, with the strongest evidence for efficacy.[2]

13.     Creatine supplements are intended to make workouts more effective. Specifically, creatine aids in increasing anaerobic energy capacity—which is produced during heavy weightlifting, sprinting, or high-intensity interval training—and decreasing protein breakdown, leading to increased muscle mass and physical performance.[3]  Creatine supplements also help direct more water to muscles, which in turn, increase muscle growth while reducing dehydration and cramping.  Finally, and perhaps one of the most well-known benefits, creatine also stimulates anabolic production, which contributes to muscle growth and tissue repair.  These phenomena lead to a faster recovery as they help repair the microtears in muscle fibers at rates that naturally occurring creatine does not.  For these reasons, creatine supplements are highly sought by those interested in muscle and strength training.  The general recommendation for creatine monohydrate as a supplement is 3 to 5 grams per day.[4]

14.     Research has also linked creatine to cognitive benefits including improved

---

[2] *Athletes and fitness influencers use creatine, but what is it? And does it work?* The Guardian, May 16, 2025, https://www.theguardian.com/wellness/2025/may/15/what-is-creatine-benefits-drawbacks.

[3] Richard B. Kreider & Jeffery R. Stout, *Creatine in Health Disease*, NUTRIENTS (Jan. 2021) *available* 10.3390/nu13020447.

[4] Howard E. LeWine, MD, *What is creatine? Potential benefits and risks of this popular supplement,* HARVARD HEALTH PUBLISHING (Mar. 20, 2024), https://www.health.harvard.edu/exercise-and-fitness/what-is-creatine-potential-benefits-and-risks-of-this-popular-supplement.

executive function and memory and reducing mental fatigue.[5]  As such, creatine is increasingly appealing to a more expansive demographic than just those who are seeking to optimize their workouts.  Indeed, Grand View Research, a product segment survey firm, valued the global creatine supplements market size at $1.1 billion in 2024 and projects it to reach $4.21 billion by 2030.

15.    Defendant is one of the largest players in this space.  In March 2026 Defendant raised more than $20,000,000 to expand its reach even further.  As one of Defendant's investors noted, "'[c]reatine is one of the most trusted supplements in the world and Create is redefining how it connects with today's wellness-driven consumers[.]  By making creatine more accessible and appealing, the brand is resonating with a broader audience.'"[6]  To date, Defendant has sold "well over 250 million [gummies], equivalent to 83 million servings."[7]

**B.    Defendant Falsely Advertises its Creatine Content**

16.    Defendant sells its Products through its website, trycreate.co, and in brick-and-mortar stores and online retailers like Amazon.com, Target, GNC, Walmart, Wegmans and beyond.  Defendant is a national brand with identical labeling, advertising, and representations across its brick-and-mortar store offerings and online.

17.    For online consumers, Defendant's representations and warranties about its creatine content are clearly stated.  For example, on the Product page, Defendant states directly

---

[5] Richard B. Kreider & Jeffery R. Stout, *supra* note 3 at 5.

[6] NutraIngredients, *Create Raises $20M in Series B to Expand Creatine Access and Innovation,* https://www.nutraingredients.com/Article/2026/03/30/create-raises-20m-in-series-b-to-expand-creatine-access-and-innovation/.

[7] *Id.*

at the top that the "creatine monohydrate gummies are designed for purity, taste and

convenience. Each gummy contained 1.5 grams of creatine monohydrate."[8]



18.     The same is true on Amazon:



---

[8] Create, *Creatine Monohydrate Gummies,* https://trycreate.co/products/creatine-monohydrate-gummies?variant=54066904858996.

19.     The Products are sold in packs containing either 30, 45, or 90 gummies.  As shown on Defendant's front label, Defendant reaffirms that each gummy contains 1.5 grams of creatine:



20.     Consumers who purchase the Products in person are exposed to the same false representations on the nutrition facts printed on the bottle:

# Supplement Facts

Serving Size: 3 Gummies
Servings Per Container: 30

|  | Amount Per Serving | % Daily Value |
|---|---|---|
| Calories | 60 | |
| Total Carbohydrates | 8g | 3%* |
| Total Sugars | 5g | † |
| Includes 2g Added Sugars | | 4%* |
| Creatine Monohydrate | 4.5g | † |

*Percent Daily Values are based on a 2,000 Calorie Diet.

†Daily Value not established

**Other Ingredients:** Tapioca Syrup, Sugar, Reverse Osmosis Water, Pectin, Allulose, Natural Orange Flavor, Natural Color, Citric Acid.

Free of: Gluten • Soy • Seed Oils • Binders • Fillers • Hormones • Casein • Whey • Dairy • Nuts • Sugar Alcohols • Artificial Dyes & Flavors

21.     However, the Products do not have 4.5 grams of creatine by the time they reach the consumer who paid for them.

22.     First, in early March 2026, Plaintiff sent a sample of his Orange Create Creatine Gummies he received in an order from Defendant to an independent ISO/IEC 17025 2017 accredited laboratory.  The laboratory analyzed the sample's creatine content using an LC-DAD instrument.  The results found that the Products contained only 4.01 grams per serving.

23.     These results are consistent with previous findings.  In 2024, a group called Food Now, using a high-performance liquid chromatography testing method tested, Defendant's 1,500 milligram (or 1.5-gram) creatine gummies—the same purported content as the Products here. Food Now found those products underfilled as well.  Those results found Defendant's products

8

contained just 1.28 grams of creatine in each gummy, or, similar to here, only 80% of the label claim.[9]  Food Now "purchased the brands … either on Amazon or directly from the brands."[10]

24.    There is an obvious explanation for Defendant's 10-20% systematic underfilling. This is evidenced by Food Now's finding that "[c]reate gummies … contained higher levels of creatinine."[11]  Creatinine is a byproduct of creatine, filtered out by the kidneys and excreted from the body through urine[12]  While "[c]reatine in powder form is stable, … when mixed with water [it] can turn into creatinine.  Gummies are not an ideal form for creatine supplements because water is used to make gummies, so it can be difficult to get the correct dosage of creatine."[13]  In other words, the creatine begins to break down once exposed to the ingredients which comprise the gummies.  Defendant's products uniformly suffer from this design defect.

25.    Despite this inherent design flaw, Defendant attempts to give consumers confidence that its labels are accurate.  For example, Defendant claims that it "pride[s itself] on [its] Quality Promise."  This includes a claim that its Products are "[t]hird party tested for all label claims."  Worse, Defendant ensures consumers that the Products' potency is tested for stability to ensure a "potency throughout shelf life."

---

[9] Food Now, *supra* note 1.

[10] *Id.*

[11] ShelfLifeStory, *Review of Creatine Gummy Products Fail Testing, Raising Red Flags,* https://medium.com/@shelflifestory/review-of-creatine-gummy-products-fail-testing-raising-red-flags-7c8281a1be0c.

[12] Jinfiniti, *What's the Difference Between Creatine and Creatinine?* https://www.jinfiniti.com/creatine-vs-creatinine/?srsltid=AfmBOor344q2M4UsQvdkCmYtop-g9NIXHwcpeFd5L9rmNEruln3WJVm6.

[13] Food Now, *supra* note 1.



## CLASS ALLEGATIONS

25.    Plaintiff brings his claims for relief pursuant to Federal Rules of Civil Procedure

23(a) and 23(b)(3) on behalf of a Nationwide Class defined as:

> All consumers in the United States who purchased the Products from any point of sale except Defendant's website, trycreate.co., during the applicable statute of limitations period.

26.    Plaintiff brings his claims for relief pursuant to the Federal Rules of Civil

Procedure 23(a) and 23(b)(3) on behalf of a New York Subclass defined as:

> All consumers in the State of New York who purchased the Products from any point of sale except Defendant's website, trycreate.co., during the applicable statute of limitations period.

27.    Unless otherwise indicated, the Nationwide Class and New York Subclass shall

collectively be referred to as the "Classes."

28.     Excluded from the Classes is any governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

29.     The Classes are properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

30.     **Numerosity:** Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Classes who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

31.     **Commonality:** The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

(a)     Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased their Products;

(b)     Whether the Products contains creatine and in what quantities that render the representations false and misleading;

(c)     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

(d)     Whether Defendant's false and misleading statement concerning their Products was likely to deceive the public;

(e)     Whether Defendant was unjustly enriched by the retention of monies derived from purchases of the Products; and

11

(f)    Whether Plaintiff and the Classes are entitled to money damages, restitution, and/or injunctive relief under the same causes of action as the other Class Members.

32.    **Typicality:** Plaintiff is a member of the Classes.  Plaintiff's claims are typical of the claims of each Class Member in that each member of the Classes was susceptible to the same deceptive, misleading conduct, purchased Defendant's Products, and suffered the same injury. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

33.    **Adequacy:** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, has a strong interest in vindicating his rights and the rights of the Classes, has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

34.    **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any questions affecting only individual members of the Classes. The issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

35.    **Superiority:** A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

(a)    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

(b)    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

(c)    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

(d)     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

(e)     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

(f)     This class action will ensure uniformity of decisions among Class Members;

(g)     The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

(h)     Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

(i)     It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products because they contain the same false and misleading representations concerning creatine content.

36.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.[14]

## CAUSES OF ACTION

### COUNT I
### Violation of New York's General Business Law § 349 ("GBL")
### On Behalf of Plaintiff and the New York Subclass

37.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

38.     Plaintiff brings this claim individually and on behalf of the New York Subclass against Defendant.

39.     This claim is brought pursuant to the laws of the State of New York.

---

[14] Plaintiff reserves the right to amend or modify the Class definition as this case progresses.

13

40.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

41.    Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the creatine content in its Products.

42.    Information as to ingredients is within Defendant's exclusive control.  At the time of his purchase, Plaintiff had no way of knowing the creatine content or quality was below what Defendant claimed was in the Products.

43.    Defendant's deceptive acts and practices were directed at consumers.

44.    Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase its Products and/or pay more for them under the false – but reasonable – belief that the Products contained as much creatine as stated on the packaging and website.  Defendant made these representations and warranties despite the Products being deficient.

45.    Defendant was able to sell the Products as a higher price than it otherwise could as a result of representations.

46.    Defendant knows that creatine content is material to consumers.  If such information were not material, Defendant would not market the Products as being creatine gummies and at certain levels.  As a result of its deceptive acts and practices, Defendant sold tens if not hundreds of thousands of its Product to unsuspecting consumers across New York.

47.    If Defendant had advertised the Products truthfully and in a non-misleading fashion, Plaintiff and other members of the New York Subclass would not have purchased them or would not have paid as much as they did for them.

14

48.     AS a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff and other Class Members were injured in that they would not have purchased the Products, or would have paid substantially less for them, but for Defendant's misrepresentations and omissions concerning the creatine content and quality.

49.     On behalf of himself and members of the New York Subclass, Plaintiff seeks to recover his actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**
**Violation of New York's GBL § 350**
**(On Behalf of Plaintiff and New York Subclass Members)**

50.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of the New York Subclass Members against Defendant.

52.     This claim is brought pursuant to the laws of the State of New York.

53.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

54.     N.Y. Gen. Bus. Law § 350-A(1) provides, in part, as follows: "The term 'false advertising,' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment

to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

55.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as it misrepresents the Products to contain more creatine than they do.  By misrepresenting the true contents of the Products, Defendant's marketing and labeling misleads a reasonable consumer.

56.     Defendant has exclusive knowledge of the ingredients and ingredient composition in the Products.

57.     Defendant's misrepresentations and omissions were material because consumers, like Plaintiff, buy and seek creatine supplements with similar representations.

58.     As a result of Defendant's misrepresentations and omissions, Plaintiff and members of the New York Subclass suffered economic injury because they would not have purchased the Products, or would have paid substantially less for them, if they had known that the Products contained less creatine than Defendant represented.

59.     Defendant was able to sell the Products at a higher price than it otherwise could as a result of the false creatine-content claims.

60.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were, and continue to be, exposed to Defendant's material misrepresentations.

61.     As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

16

## COUNT III
### Breach of Express Warranty
### (On Behalf of the Nationwide Class and New York Subclass)

62. Plaintiff incorporates by reference and realleges each and every allegation above as if fully set forth herein.

63. Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

64. As the designer, manufacturer, marketer, distributor, and/or seller of the Products, Defendant issued an express warranty by representing to consumers in advertising and at the point of purchase the amount of creatine in the Products.  Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Class Members.

65. The Products do not conform to Defendant's representations about the amount of creatine in the Products.  By falsely representing the Products in this way, Defendant breached express warranties.

66. As a direct and proximate result of Defendant's breach, Plaintiff and Class Members were injured because they:

   a. Paid money for Products that were not what Defendant represented;

   b. Were deprived of the benefit of their bargain because the Products they purchased were different than Defendant advertised; and

   c. Were deprived of the benefit of their bargain because the Products they purchased had less value than Defendant represented.  Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class Members would not have purchased the Products or would have not paid as much as they did for them.

67. On or about March 31, 2026, prior to filing this Complaint, Defendant was served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiff's counsel sent Defendant a letter advising Defendant that it breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by

17

refunding the monies received therefrom.  A true and correct copy of the letter is attached hereto as **Exhibit 1**.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, and the Classes on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest in all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order awarding Plaintiff, the Classes their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 22, 2026                    Respectfully submitted,

                                        **BURSOR & FISHER, P.A.**

                                        By: */s/ Philip L. Fraietta*
                                                Philip L. Fraietta

                                        Philip L. Fraietta
                                        Matthew A. Girardi
                                        50 Main Street, Suite 475
                                        White Plains, NY 10606
                                        Telephone: (914) 874-0710
                                        Facsimile: (914) 206-3656
                                        Email: pfraietta@bursor.com
                                                mgirardi@bursor.com

18

**BURSOR & FISHER, P.A.**
Caroline C. Donovan
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: cdonovan@bursor.com

*Attorneys for Plaintiff*

19